HEARD NOVEMBER TERM, 1872.

## WILLIAMS *vs.* CALDWELL.

G. requested W. to ship to him certain goods, and C. promised W. to accept G.'s draft for the amount of the goods if he would comply with the request, which was done, and the goods charged on W.'s books to G.: *Held*, That C.'s promise was within the Statute of Frauds, and void for want of writing.

BEFORE GRAHAM, J., AT CHARLESTON, FEBRUARY TERM, 1872.

Action by George W. Williams & Co., plaintiffs, against James M. Caldwell & Co., defendants.

The complainant alleged:

"1. That some time since, to wit: on or about the fourteenth day of October, eighteen hundred and sixty-nine, one J. H. Gayle, being desirous of purchasing sundry goods, wares and merchandise of and from the said plaintiffs, amounting in value to the sum of two hundred and twenty-one 94–100 dollars, it was agreed by and between them, the said plaintiffs and the said defendants, before the sale of the said goods, wares and merchandise, or delivery of the same, that if they, the said plaintiffs, would make sale of the same to the said J. H. Gayle, and ship the same to him to Wright's Bluff, S. C., by the steamer Marion, and cause the same to be insured, they, the said defendants, would pay to the said plaintiffs the amount of the value of the said goods, wares and merchandise, to wit: the sum of two hundred and twenty-one 94-100 dollars, as also the amount of two 22-100 dollars for insuring the same; or that they, the said defendants, would accept the draft of the said J. H. Gayle, drawn in favor of the said plaintiffs, at thirty days, for the said sum of two hundred and twenty-one 94-100 dollars, the value of the said goods, wares and merchandise, and would also pay the amount of two 22-100 dollars for insuring the same.

" 2. That they, the said plaintiffs, did, in conformity with the promise, undertaking and agreement made by the said defendants, and on the faith and credit of the same, cause to be shipped to the said J. H. Gayle, at Wright's Bluff, S. C., by the steamer Marion, the said goods, wares and merchandise, a list and statement of which is hereunto annexed, amounting in value to the sum of two hundred and twenty-one 94-100 dollars, and did also cause the said goods, wares and merchandise, shipped by the steamer Marion to Wright's Bluff, S. C., to be insured at a cost of two 22-100 dollars; but that the

said defendants have refused either to pay the said plaintiffs the said amount of two hundred and twenty-one 94-100 dollars, the value of the goods, wares and merchandise, and the amount of two 22-100 dollars paid by them for insuring the same, or to accept the draft of the said J. H. Gayle, drawn in favor of them, the said plaintiffs, for the said sum of two hundred and twenty-one 94-100 dollars and directed to them, the said defendants, when the said draft was presented to them for acceptance."

The defendants answered, and, for a first defense, relied upon the Statute of Frauds, and, for a second defense, denied the agreement.

The plaintiffs called a witness, who gave evidence tending to prove the allegations of the complaint : That before the goods were shipped defendants promised plaintiffs to pay for them if the plaintiffs would ship them to Gayle; that the goods were shipped and charged on plaintiffs' books to Gayle.

At the close of plaintiffs' case defendants moved for a non-suit, on the ground that the contract, as alleged and testified to, was void, the same not being in writing.    The motion was denied, and defendants excepted.

Defendants then gave evidence tending to show that their promise was to accept Gayle's draft on them for the amount of the goods, payable at sixty days from the date of the purchase; and that no such draft had ever been presented.

In reply, plaintiffs gave evidence tending to show that the draft which defendants agreed to accept was a draft payable at thirty days; that such a draft was received from Gayle, but not until three days after it had matured ; that it was then presented to defendants, who refused to accept the same.

The presiding Judge charged the jury that if defendants were the original purchasers of the goods, they were liable; that the question was, to whom did plaintiffs sell the goods ?   If they were sold to Gayle, then the promise of defendants was not binding.

The jury found for the plaintiffs $221.94, and judgment was entered thereon.

The defendants appealed, and now renewed in this Court their motion for a non-suit.

*Simonton* and *Barker* cited *Birkmeyer* vs. *Darnel*, Salk., 27 ; *Matson* vs. *Wharan*, 2 T. R., 80 ; *Forth* vs. *Stanton*, 1 Saund., 211 ; *Jones* vs. *Cooper*, Cowp., 228 ; *Leland* vs. *Crayon*, 1 McC., 100 ; *Richardson*

vs. *Richardson,* 1 McM., 280; *Bronson* vs. *Stroud,* 2 McM., 372; *Simpson* vs. *Nance,* 1 Sp., 4; *Taylor* vs. *Drake,* 4 Strob., 431.

*Buist,* contra:

The exception of the defendants is to the ruling of the presiding Judge, overruling the motion made for a non-suit.

It is respectfully submitted, under the authorities, that the evidence submitted by the plaintiffs was sufficient to authorize the submission of the case to the jury, and that the presiding Judge was, therefore, not in error, as alleged.

In *Darnell* vs. *Pratt,* (2 Carr. & Pay., 82,) it appeared that a mother took her son to school, the father being then alive; but it did not appear what transpired on that occasion.  Afterwards a bill was delivered to the defendant, (the boy's uncle,) who said it was quite right to deliver the bill to him, for he was answerable.  It was decided, at *nisi prius,* and afterwards by the Court, *that it was properly left to the jury to say whether the original credit was not given to the defendant only.*

In *Storr* vs. *Scott,* (6 Carr., Pay., 241,) where the defendant, as steward of certain races, selected at the shop of the plaintiff a gold cup, saying, " you must send the cup as usual, I suppose, to the clerk of the course," which had frequently been done by the plaintiff before.  Lord Lyndhurst said to the jury: *"The question is, upon whose credit the cup was furnished,"* and left them to say whether the credit was to be given to the defendant or to the clerk of the course.

The rule, as extracted from the English cases, is thus expressed in Leigh's N. P., 1025: *" It is a question for the jury, in such cases, whether credit was given* to the defendant before the debt was incurred, or to another, as the principal, *taking all the circumstances of the case into consideration."*

In the late case of *Mountstephen* vs. *Lakeman* (L. R. 7, Q. B., Ex. Ch., 196) the defendant being chairman of a local board of health, asked the plaintiff whether he would lay certain pipes.  The plaintiff said, " I have no objection to do the work, if you or the board will order the work, or become responsible for the payment." The defendant replied, " Go on and do the work, and I will see you paid;" and accordingly the plaintiff did the work.  The work was not authorized by the board, and they refused to pay for it.  It was held that the defendant was liable for the price of the work,

*as there was evidence for the jury that the defendant contracted to be primarily liable.*

In 3 Parsons on Contracts, 20, it is said : " From the very definition of a collateral promise, it follows that there must be some one who owes the debt directly. There must exist an original liability as the foundation for the collateral liability; and one of these liabilities must be entirely distinct from the other. If, therefore, the creditor trusted to one of the parties more than to the other, but did, in fact, trust to one together with the other, it is not within the statute ; and in ascertaining whether this original and distinct liability exists, and then a collateral one founded upon it, *the Court will look to the intention of the parties, as they may be inferred from all the circumstances of the case and of the parties.* At the same time, however, it must be remembered that the expressions used by the parties are the first and most direct evidence of their intention."

In the notes to Smith's Leading Cases, case of *Berkmyr* vs. *Darnell,* Vol. 1st, Part 1st, page 474, it is said : " When it is doubtful whether the third person is liable on the credit given exclusively to the defendant, *the question should be left to the jury on all the evidence;* (*Elder* vs. *Warfield,* 7 Harris, 391 ; *Scudder* vs. *Hale,* 1 South, 249;) *and the fact that the goods were charged to a third person, for whose use they were bought,* or that a bill was rendered to him as the purchaser, although strong, *will not necessarily be conclusive evidence in favor of the defendant.*—*Homans* vs. *Lombard,* 8 Shepley, 508 ; *Walker* vs. *Richards,* 41 N. H., 388 ; *Hazen* vs. *Bearden,* 4 Sneed, 48 ; *Loomis* vs. *Smith,* 17 Conn., 115. Even when the promise is not given until after the goods are ordered, it may still be so positive as to shew, in connection with the other evidence, that the delivery was solely upon the credit of the defendant, and thus make him liable, notwithstanding the statute.—*Darlington* vs. *McCann,* 2 E. D. Smith, 411 ; *Briggs* vs. *Evans,* 2 E. D. Smith, 193 ; *Gleason* vs. *Briggs,* 28 Verm., 155.

The burden of proof rests on the party who relies on the statute as a defense to a cause of action, which is *prima facie* valid ; and the Court will not presume either that another and concurrent obligation exists, or that the party liable for its performance is a principal, and the defendant merely answerable for his debt or default.—*Beaman* vs. *Russell,* 20 Verm., 205 ; *Holmes* vs. *Knight,* 10 N. H., 205.

In *Towne* vs. *Grover,* 9 Pick., 306, W. undertook to complete certain work in defendant's house, but was unable to procure timber ; whereupon the plaintiff supplied the timber, on defendant's undertaking " to pay him for it out of the money that he (the defendant) had to pay to W., provided W.'s work was completed." The Court held that this was not a collateral, but a direct undertaking by the defendant.

In *McKinney* vs. *Quilter,* 4 McC., 409, Johnson, J., in delivering the opinion of the Court, says : " The statute provides that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, unless the agreement upon which such action is brought, or some memorandum or note thereof be in writing, and signed by the party to be charged therewith, &c.

" The cases involving the construction of this clause of the statute are very numerous, and some of the distinctions are very subtile and refined ; but the broad rule on which they all proceed is, that when the undertaking is original, it is binding, although it is not in writing, and although it may have grown out of a debt, &c., of another, but otherwise when it is collateral to the liability of another."

The defendants, by giving evidence and submitting the case to a jury, are bound. They cannot retract their submission and demand a non-suit.—*McEwen* vs. *Mazyck & Bell,* 3 Rich., 215 ; 4 Strob., 192.

Feb. 14, 1873. The opinion of the Court was delivered by

WILLARD, A. J. Under the authority of the ruling in *Taylor* vs. *Drake,* (4 Strob., 431,) it is clear that the Circuit Judge should have granted the defendant's motion for a non-suit. The contract on which the action was brought, as disclosed by both the pleadings and evidence, was a collateral contract to answer for the debt of another, and, as such, must be in writing, to be capable of enforcement under the statute of frauds. It appeared, by the plaintiff's evidence, direct and uncontradicted, that the goods were sold to Gayle upon the promise of defendants to accept a draft drawn for the purpose of paying the purchase money on such sale. As the case stood at the time the motion for a non-suit was made, and that aspect is unchanged, there was no evidence that could justify a jury in finding the contract of sale, as it regards the goods, as a contract

between the plaintiffs, as sellers, and the defendants, as purchasers. On the contrary, the transaction, regarded as one of purchase and sale, was between the plaintiffs and Gayle. The promise of the defendants was both inducement and consideration to such contract of sale, and was, in substance, a contract to assure the performance of what Gayle had undertaken to do, namely, to pay for the goods purchased.

The point ruled in Taylor vs. Drake, (4 Strob., 431,) was, that if the person to whom the goods were delivered is liable as purchaser, then a promise made by a third person to pay the amount of such purchase must be regarded as collateral, and, as such, must be in writing, in conformity with the Statute of Frauds, in order to be capable of being enforced.

The promise of defendants here was to accept for the amount of such purchase. Such a promise was, in substance, a promise to pay for the goods sold to Gayle, and for which the latter was primarily liable. The only consideration for defendants' promise was the credit given to Gayle, and this shows that the contract to accept was intended as a means of securing payment for the goods sold and delivered to Gayle.

In Taylor vs. Drake the promise was to pay or endorse. Here the promise was to accept; and on the same ground on which, in that case, the contract was held to be collateral to an original contract of sale, the present promise must receive the same construction.

In Taylor vs. Drake a non-suit was entered by the appellate Court after a verdict for the plaintiff, thus showing that on a clear and uncontradicted state of evidence the Court will undertake to say, without the aid of the jury, whether the contract is to be regarded as original or collateral. As there was no question of credibility or of contradictory testimony to be settled, and no inference of fact to be drawn presumptively, there was nothing to put in exercise the peculiar functions of a jury. The decision of that case leads to the conclusion that the present verdict must be set aside, and the case remanded for judgment, dismissing the complaint.

Moses, C. J., and Wright, A. J., concurred.